UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| MICHAEL BRIDGES, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:04-CV-6-TS |
| | ) | |
| CECIL DAVIS, | ) | |
| | ) | |
| Respondent | ) | |

**OPINION AND ORDER**

*Pro se* petitioner, Michael Bridges, an inmate at the Indiana State Prison in Michigan City, Indiana, was charged with refusing to submit a urine sample. After exhausting his administrative remedies, Bridges petitioned for relief under 28 U.S.C. § 2254. The Response filed on behalf of the respondent by the Attorney General of Indiana demonstrates the necessary compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982). In its response, the Attorney General of Indiana has submitted the administrative record including documents designated A through N, which set out the underlying procedures in this conduct adjustment board (CAB) proceeding. The petitioner filed a traverse.

**A.  Relevant Facts**

On December 13, 2002, Officer Muzik wrote a conduct report charging Bridges with refusal to submit to a test to determine if he used a controlled substance. (Ex. A.) On that morning, at about 7:30a.m., Officer Muzik asked Bridges to take a urine test. (*Id.*) Bridges responded by stating that he does not take urine tests and then returned to his cell. (*Id.*) Bridges was given notice of the

charges on December 17, 2002. (Ex. B.) At the screening, Bridges requested a lay advocate, the witness statement of Officer Krachinski, and a copy of the random urinalysis list as physical evidence. (*Id.*) The CAB hearing was held on December 31, 2002. (Ex. C.) The CAB found Bridges guilty of the charge. (*Id.*) The finding of guilt was based on the staff reports, Bridges's statement, evidence from witnesses, and the report from the lab. The sanction imposed was a ninety day earned credit time loss. The finding of guilt and the sanctions were upheld by the facility head and the final reviewing authority.

**B.  Standard of Review**

As the loss of good time credit is a "liberty" interest protected by the Fourteenth Amendment to the Constitution, it requires certain procedural steps as stated in *Wolff v. McDonnell*, 418 U.S. 539 (1974). Due process requires that Bridges be given: (1) advance written notice of the charges against him at least twenty-four hours before the hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. *Henderson v. U.S. Parole Comm'n*, 13 F.3d 1073 (7th Cir. 1994) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-567 (1974)).

For the hearing to be meaningful, the prisoner should be afforded an opportunity to be heard before an impartial decision maker, *id.*, and the decision must be supported by "some evidence" in the record. *Superintendent, Mass. Corr. Institution at Walpole v. Hill*, 472 U.S. 445 (1985). The so-called "some evidence" standard applies in this Circuit, as reflected in *Webb v. Anderson*, 224 F.3d 649 (7th Cir. 2000), *McPherson v. McBride*, 188 F.3d 784 (7th Cir. 1999), and *Meeks v. McBride,*

2

81 F.3d 717 (7th Cir. 1996).

This is a lenient standard, requiring no more than "a modicum of evidence." *Webb*, 224 F.3d at 652. Even evidence that can be characterized as meager is sufficient to support the revocation of good-time credits so long as "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.* (citing *Hill*, 472 U.S. at 457). "The relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* (citing *Hill*, 472 U.S. at 455–56).

**C. Discussion**

Bridges claims that the State violated his constitutional rights in four ways: (1) his due process rights were violated because he was not given a copy of the random urinalysis list at the hearing; (2) the evidence used to find him guilty was insufficient because the CAB did not provide a complete statement of the proceedings; (3) the search was not conducted in a reasonable manner; (4) he was denied an impartial decision maker.

**(1)** *Due Process Violation*

Bridges says his rights were violated because he was denied access to the random urinalysis list. "[T]he rule of *Brady v. Maryland*, 373 U.S. 83 (1963), requiring the disclosure of material, exculpatory evidence, applies to prison disciplinary proceedings." In *Piggie v. Cotton*, 344 F.3d 674, 677–78 (7th Cir. 2003); *see also Chavis v. Rowe*, 643 F.2d 1281, 1285–86 (7th Cir. 1981). In prison disciplinary proceedings *Brady* has two goals: (1) that the CAB considers all relevant evidence; (2) to make sure the inmate can present his best defense. *Piggie*, 344 F.3d at 678.

3

Here, the CAB denied Bridges access to the list stating that "[t]he random urinalysis list is not available to the offender." In his traverse, Bridges says that the list would develop a defense against the lab report, and would prove the lab report was unreliable. This argument is without merit. The lab report would prove nothing because Bridges refused the test. (*See* Ex. E.) Bridges does not say how access to the list would prove the test unreliable, even if he had taken the test. Bridges's rights are not violated so long as the CAB reviews all the evidence. On the other hand, he does not have the right to review evidence that is not material or exculpatory. *See Hoskins v. McBride*, 202 F. Supp. 2d 839, 845 (N.D. Ind. 2002). In this case the CAB considered all relevant evidence, and Bridges had the opportunity to explain why he refused the test. Accordingly, no due process violation exists in this case.

**(2)  *Sufficiency of the Evidence***

Bridges argues that the CAB failed to provide him a written statement of the evidence on which it relied to find him guilty. As noted above, the amount of evidence needed in these types of cases is very modest. In this case, the presented evidence meets the "some evidence" standard. In finding Bridges guilty, the CAB indicates that it relied upon the staff reports, Bridges's statement, evidence from witnesses, and the lab report. (Ex. C.) The conduct report explains that Bridges refused to submit to the urine test. (Ex. A.) The disciplinary hearing report also contains the reason for the decision: "[t]he random urinalysis list is not available to the offender. The fact that the offender refused the test and did not attempt to wait the two hours. Therefore we find the offender guilty." The reason for the finding is clear: Bridges refused the test. Consequently, there was sufficient evidence to find him guilty, and Bridges's claim that his finding of guilt was based on

4

insufficient evidence fails.

**(3)** *Urinalysis Testing*

Bridges alleges that the manner in which the urinalysis test was conducted was unreasonable. He claims that when the officer arrived to advise him of the test, he was using the washroom. (Traverse 23.) He got dressed and reported for the test. When asked to take the test, he says, he informed the officer that he could not produce a sample because he had just urinated.(*Id.*)

Bridges alleges that his due process rights were violated because Officer Muzik's report does not indicate that he allotted the two hour waiting period or that he offered Bridges any water to assist him in providing a sample. Bridges submits Department of Correction Operation Directive Offender Urine Testing for Drugs, ISP 00-2, which states the procedures for urine testing. (Ex. Traverse 15.) However, contrary to Bridges's argument, the Report of Conduct states that, after being asked to take the test, Bridges turned around and went back to his cell.

There is nothing unreasonable about the testing procedures in this case. The procedures used by the State of Indiana allow a person being tested to have an eight ounce glass of water and be given two hours to produce a sample. (Ex. Traverse 15.) This is completely reasonable. Here, the evidence was presented that Bridges was asked to take the test, but refused it and walked away. As a result, he was not given two hours or water. The CAB was free to accept the conduct report, the witness report and to interpret Bridges's actions as it chose to.

To sum up, Bridges received all the protections required by *Wolff*. He was given advance notice of the charges, he had an opportunity to call witnesses and present documentary evidence in his defense, and he received a written statement by the fact finder of the evidence relied on and the

5

reasons for the disciplinary action. The fact that the CAB did not believe his claim that just before the test he had urinated and consequently was unable to produce the sample does not mean that his constitutional rights were violated.

**(4)** *Impartial Decision Maker*

Bridges claims that he was denied an impartial decision-maker because the chair of the CAB believed one officer and not the other, and that the chair could not be impartial due to his close connection with prison security. In *Merritt v. De Los Santos*, 721 F.2d 598, 601 (7th Cir.1983), the court held that if an official is substantially involved in the investigation of the charges against an inmate, the due process requirement of impartiality mandates the disqualification of that official. "Tangential involvement" in the investigation, however, does not disqualify an officer from sitting on the adjustment committee. *Merritt v. De Los Santos*, 721 F.2d at 601.

In this case, there is no indication that the CAB chair was involved in the investigation of this case. Bridges's argument that the CAB believed the statement of one officer but not the other is without merit. Officer Muzik wrote the conduct report and Officer Krachinski gave a witness statement. There is nothing in the record to indicate that by finding Bridges guilty the CAB did not believe the Officer Krachinski. The chairperson's involvement with prison security does not render him prejudiced against Bridges either. "Adjudicators enjoy a presumption of honesty and integrity." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). Bridges fails to explain how the CAB chairperson's involvement prejudiced this case. Accordingly, Bridges has not demonstrated that he was denied procedural due process.

## CONCLUSION

For these reasons, Bridges's petition for relief under 28 U.S.C. § 2254 is **DENIED.**

SO ORDERED on October 25, 2005.

                                            S/ Theresa L. Springmann
                                        THERESA L. SPRINGMANN
                                        UNITED STATES DISTRICT COURT